## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **MACKENZIE HAWKINS,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 4:23-CV-1406-RDP |
| **JONATHON HORTON, et al.,** | } |
| **Defendants.** | } |

### MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendant Sheriff Jonathan Horton's Motion to Dismiss. (Doc. # 15). The Motion has been fully briefed. (Docs. # 17, 21, 27). For the reasons discussed below, the Motion (Doc. # 15) is due to be granted and Plaintiff's claims against Sheriff Horton dismissed without prejudice.

### I.    Factual Background[1]

On October 28, 2022, Anthony Hawkins ("Hawkins") was operating a four-wheeler in Boaz, Alabama when Deputy Robin Grant ("Deputy Grant"), an employe of the Etowah County Sheriff's Department, began following him. (Doc. # 11 at ¶ 8). Sometime after Deputy Grant began tailing Hawkins, Hawkins turned onto Egypt Road. (*Id.* at ¶ 9). At that point, Deputy Grant fired approximately two to four gunshots at Hawkins as his four-wheeler was still in operation, striking Hawkins from behind. (*Id.*). After a short period of time, Deputy Grant fired

---

[1] In evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). Accordingly, the facts set out herein are taken from Plaintiff's Amended Complaint (Doc. # 11), and they are assumed true for purposes of this Memorandum Opinion. However, the court would be amiss if it did not address that this is simply an outline of the allegations from Plaintiff's perspective.

another two to four gunshots at Hawkins. (*Id.*). Altogether, Hawkins was struck by six bullets, all from behind. (*Id.*). Hawkins died at the scene. (*Id.* at ¶ 10).

Plaintiff Mackenzie Hawkins ("Plaintiff"), the surviving spouse of Anthony Hawkins and the personal representative of his estate, filed the present action on October 17, 2023. (Doc. # 1). On January 2, 2024, Plaintiff filed an Amended Complaint. (Doc. # 11). The Amended Complaint alleges two claims: (1) Excessive Force Causing Wrongful Death Under 42 U.S.C. § 1983 against Deputy Grant and (2) Excessive Force Supervisory Liability Under 42 U.S.C. § 1983 against Etowah County Sheriff Jonathan Horton ("Sheriff Horton"). (*Id.* at 6-10).

Plaintiff alleges that Sheriff Horton has failed and refused to address systemic deficiencies regarding the use of force by the Etowah County Sheriff's Deputies for years. (*Id.* at ¶ 11). According to Plaintiff, "Sheriff Horton established a custom or practice of condoning excessive, unconstitutional, and/or unskilled force – a custom and practice that all Etowah County Sheriff's Deputies knew would always protect them if they used excessive, unconstitutional, and/or unskillful force." (*Id.* at ¶ 13). Further, Plaintiff contends that Sheriff Horton knew or should have known that Deputy Grant had previously been involved with one or more incidents involving the use of deadly unlawful force. (*Id.* at 14).

On January 16, 2024, Sheriff Horton filed a Motion to Dismiss, alleging that Plaintiff's claim against him should be dismissed for two reasons. (Doc. # 15). First, Sheriff Horton argues that Plaintiff's First Amended Complaint fails to state a plausible claim for supervisory liability. (*Id.*). Second, Sheriff Horton asserts he is entitled to qualified immunity because Plaintiff failed to allege a violation of clearly established law. (*Id.*).

## II.     Legal Standard

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138

(11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

Complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## III. Discussion

Sheriff Horton argues that Plaintiff's First Amended Complaint should be dismissed for two reasons: (1) it fails to state a plausible claim for supervisory liability, and (2) Sheriff Horton is entitled to qualified immunity because Plaintiff failed to allege a violation of clearly established law. But actually, as noted below, this motion turns on whether Plaintiff has sufficiently alleged a constitutional violation – *i.e.*, a causal connection between Sheriff Horton's actions or inactions and Deputy Grant's use of force.

### a. At Present, Plaintiff has Failed to State a Plausible Claim for Supervisory Liability

"It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and quotation omitted). To establish § 1983 liability, a plaintiff "must [ ] allege that the supervisor, through his

4

own actions, violated the Constitution." *Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022). Therefore, when a supervisor did not personally participate in the alleged constitutional violation, the plaintiff must demonstrate a causal connection between the supervisor's actions or inactions and the alleged misconduct. *Iqbal*, 556 U.S. at 676; *Ingram*, 30 F.4th at 1254; *Hartley*, 193 F.3d at 1269. This is an "extremely rigorous" standard. *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir. 2019).

A plaintiff can establish the required causal connection by showing that "a history of widespread abuse put[] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fail[ed] to do so." *Hartley*, 193 F.3d at 1269 (citation and quotation omitted). Under this approach, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Id.* (citation and quotation omitted). Alternatively, "[a] supervisor can be held liable for implementing or failing to implement a policy that causes his subordinates to believe that they can permissibly violate another's constitutional rights if the subordinates then do so based on that belief." *Ingram*, 30 F.4th at 1256. Allegations of that type of behavior "would [also] provide the causal link between the challenged conduct and the … policy, because [the officer] would have been acting in accordance with the policy of allowing or encouraging excessive force." *Id.* (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985)). "[T]o prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents … or multiple reports of prior misconduct by a particular employee." *Piazza*, 923 F.3d at 957 (internal citations omitted); *see Ingram*, 30 F.4th at 1254.

In other words, "[a] causal connection may be established when 1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged

deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in a deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them." *Matthews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007).

Here, Plaintiff has not met her burden of pleading a causal connection between Sheriff Horton's actions or inactions and Deputy Grant's alleged use of excessive force. Although Plaintiff asserts that "Sheriff Horton knew or should have known that [Deputy] Grant had previously been involved with one or more incidents involving the alleged use of unlawful, excessive, and/or deadly force," (Doc. # 11 at ¶ 14), the First Amended Complaint fails to allege even one other incident involving Deputy Grant's use of excessive force. Even viewing this allegation in the light most favorable to Plaintiff, this amounts to a naked assertion without any factual support. *See Aaron as next friends of Aaron v. Hudson*, 2022 WL 1085608, at *5 (N.D. Ala. 2022).

Further, although Plaintiff asserts that Sheriff Horton had a "custom" of encouraging and supporting the use of excessive force, she does not offer a single factual allegation to support a plausible inference that such a custom existed. *See Pettus v. Hill*, 2006 WL 8437974, at *3 (N.D. Ala. 2006) (finding that a plaintiff did not state a claim for supervisory liability because he did not describe any specific written or unwritten policy which caused the alleged violation). Nor does she point to any other instances where officers used excessive force and Sheriff Horton implemented this custom of refusing to discipline his deputies.

The court commends Plaintiff's counsel for his transparency and candor. He concedes, for purposes of this motion only, that he currently lacks sufficient information to adequately plead a claim for supervisory liability against Sheriff Horton. Therefore, although there may be a

basis for alleging a supervisory liability claim against Sheriff Horton at some point in the future, the facts necessary to do so are not presently in Plaintiff's counsel possession. Accordingly, Plaintiff's First Amended Complaint fails to state a claim for supervisory liability against Sheriff Horton and is due to be dismissed without prejudice.

### b.     Qualified Immunity

Sheriff Horton also argues that he is entitled to qualified immunity because Plaintiff's complaint fails to allege that Sheriff Horton violated a clearly established constitutional right. (Doc. # 17 at 20).

The question of whether a defendant is entitled to qualified immunity is answered by engaging in a three-step analysis. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1136-37 (11th Cir. 2007). The initial burden is on the official claiming qualified immunity to establish that he was acting within his discretionary authority. *Id.* When the plaintiff does not dispute the defendant was operating within his discretionary authority (and, that is the case here), the burden shifts to the plaintiff to establish: (1) that the "defendant's conduct violated a statutory or constitutional right" and (2) that the violation was of "clearly established" law. *Id.* at 1137 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

As discussed above, Plaintiff's First Amended Complaint does not plausibly plead that Sheriff Horton violated a constitutional right. As a result, Plaintiff has not met her burden of establishing the first prong of the qualified immunity analysis. For this reason, too, Plaintiff's claims against Sheriff Horton are due to be dismissed without prejudice.

At oral argument, Sheriff Horton's counsel noted that a plaintiff's failure to meet his or her burden under the qualified immunity analysis typically results in dismissal with prejudice. Although that is often the case, the court notes that such an outcome ordinarily occurs when a

plaintiff fails to meet the burden of showing a defendant is not entitled to qualified immunity under the second prong – that is, when the plaintiff plausibly pleads (or establishes) the violation of a constitutional right but cannot show that the violation was of clearly established law. In that scenario, dismissal with prejudice is appropriate, in part, because it is a virtual certainty that fact discovery would not have any bearing on whether a constitutional right was or was not clearly established at the time of the violation.

However, here, Plaintiff's problem does not stem from any failure to show that a constitutional right was clearly established. Rather, Plaintiff has not sufficiently alleged a constitutional violation. Of course, this failure may be owing to Plaintiff not having access to any of Deputy Grant's disciplinary records. Discovery related to Plaintiff's claims against Deputy Grant could reasonably reveal facts related to whether Sheriff Horton, in his supervisory capacity, violated a constitutional right. If facts are uncovered showing Sheriff Horton had some constitutional duty here, but violated it, Plaintiff may be able to plausibly plead a supervisory liability claim against Sheriff Horton and should have the opportunity to do so. Therefore, the court finds that this is a situation where dismissal without prejudice is the appropriate remedy to allow Plaintiff a chance to conduct discovery.

Having said that, discovery in this matter should be focused on Deputy Grant. Discovery related to Deputy Grant's prior service and the incident at issue may provide the factual basis necessary for Plaintiff's claims against Sheriff Horton. However, the court cautions that, based upon the current pleadings, it would be inappropriate to turn discovery into a wide ranging inquiry into the conduct of other officers (*i.e.*, besides Deputy Grant) who were under Horton's supervision.

## IV. Conclusion

For the foregoing reasons, Sheriff Horton's Motion to Dismiss (Doc. # 15) is **GRANTED** and Plaintiff's claims against him are (Doc. # 11) **DISMISSED WITHOUT PREJUDICE**. In the event discovery related to Deputy Grant reveals facts to support a plausible claim for supervisory liability against Sheriff Horton, Plaintiff may amend the pleadings.

This dismissal shall not affect any other right, claim or cause of action which Plaintiff has, or may have, against any remaining Defendant.

In addition, Defendants' Motions to Stay (Docs. # 16, 30) are **DENIED AS MOOT**.

**DONE** and **ORDERED** this April 12, 2024.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE